IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JEREMY L. NEFF, | ) | 4:16CV3068 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| v. | ) | AND ORDER |
| | ) | |
| DEPARTMENT OF HEALTH & HUMAN SERVICES; DENNIS CONNOLLY; CINDY DYKEMAN; and SANAT ROY, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, Jeremy Neff, filed this case on April 27, 2016. He has been granted leave to proceed in forma pauperis. The court now conducts an initial review of Neff's complaint to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

## I. SUMMARY OF COMPLAINT

Neff alleges he is a civilly committed detainee at the Lincoln Regional Center ("LRC") who has not been allowed to participate in work therapy because of a disability, the nature of which is not described in the complaint. Neff claims he has been deprived of his rights under the Eighth and Fourteenth Amendments, and he seeks both damages and injunctive relief. Named as defendants are the Nebraska Department of Health and Human Services and three persons associated with LRC: Dennis Connolly, whom Neff identifies as "a medical doctor"; Cindy Dykeman, whom Neff identifies as "the program director"; and Sanat Roy, whom Neff identifies as "the program psychologist." Connolly, Dykeman, and Roy are sued in both their individual and official capacities.

## II. STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). "The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

## III. ANALYSIS

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). Neff claims violations of the Eighth and Fourteenth Amendments, and alleges the defendants acted under color of state law.

A section 1983 action cannot be brought against the Nebraska Department of Health and Human Services. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 & 70 (1989) (a state and its agencies are not "persons" within the meaning of section 1983); *see also Quern v. Jordan*, 440 U.S. 332, 345 (1979) (section 1983 does not abrogate a state's Eleventh Amendment immunity). Nor can Connolly, Dykeman, and Roy be sued in their official capacities for damages, because such a suit is no different from a suit against the state itself. *See Will*, 491 U.S. at 70-71. However, these individuals may be sued personally for damages under section 1983, *see Hafer v. Melo*, 502 U.S. 21, 23 (1991) (state officials sued in their individual capacities are "persons" for purposes of section 1983), and may be sued in their official capacities for prospective injunctive relief, *see Will*, 491 U.S. at 71 n. 10 (state officials sued in their official capacities for injunctive relief are "persons" under section 1983 because official capacity actions for prospective relief are not treated as actions against the state). It must next be considered whether any actionable claims for relief are stated against Connolly, Dykeman, and Roy, either in their individual or official capacities.

"Under the Fourteenth Amendment, civilly-committed persons, like 'pretrial detainees[,] are entitled to at least as great protection as that afforded convicted prisoners under the Eighth Amendment.'" *Beaulieu v. Ludeman*, 690 F.3d 1017, 1045 (8th Cir. 2012) (quoting *Crow v. Montgomery,* 403 F.3d 598, 601 (8th Cir. 2005))."To prevail on an Eighth Amendment claim, an inmate must show both an objective element, that the deprivation was sufficiently serious, and a subjective element, that the defendant acted with a sufficiently culpable state of mind." *Jackson v. Everett,* 140 F.3d 1149, 1151 (8th Cir. 1998).

The objective element of an Eighth Amendment claim requires a deprivation which, viewed objectively, is sufficiently "serious," that is, "the prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities;' or the prison official must incarcerate the inmate under conditions 'posing a substantial risk of serious harm.'" *Simmons v. Cook,* 154 F.3d 805, 807 (8th Cir. 1998). The subjective element of an Eighth Amendment claim requires that an

-3-

official act with deliberate indifference to inmate health or safety. Deliberate indifference means that the official both was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct. *Olson v. Bloomberg,* 339 F.3d 730, 736 (8th Cir. 2003). Neff's pleading fails to show the existence of either element.

Although Neff alleges in conclusory fashion that he has been denied due process and subjected to cruel and unusual punishment, it is apparent from the facts alleged in the complaint that Neff is actually claiming he has been discriminated against because of his disability. The applicable constitutional provision is the Equal Protection Clause of the Fourteenth Amendment.

"A class-of-one claim [under the Equal Protection Clause] is stated when a plaintiff alleges that a defendant intentionally treated [him] differently from others who are similarly situated and that no rational basis existed for the difference in treatment." *Mathers v. Wright,* 636 F.3d 396, 399 (8th Cir. 2011). While Neff indicates he has been treated differently because of his disability and does not enjoy "the same privileges as all other patients here at the Lincoln Regional Center that qualify for work therapy positions, that can be done without limitations" (Filing No. 1 at CM/ECF pp. 4-5), he does not describe what intentional actions were taken by each defendant, nor does he allege that the difference in treatment was irrational. Because of these pleading deficiencies, no actionable Fourteenth Amendment claim is stated.

Disability discrimination is also prohibited by federal statute. Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, "prohibits qualified individuals with disabilities from being excluded from participation in or the benefits of the services, programs, or activities of a public entity." *Randolph v.*

*Rodgers,* 170 F.3d 850, 857 (8th Cir.1999).[1] To state a prima facie claim under the ADA, a plaintiff must show: (1) he is a person with a disability as defined by statute; (2) he is otherwise qualified for the benefit in question; and (3) he was excluded from the benefit due to discrimination based upon disability. *See* 42 U.S.C. § 12131 *et seq.; see also Gorman v. Bartch,* 152 F.3d 907, 911-12 (8th Cir. 1998).[2]

A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities ... (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). A physical impairment is "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine." 29 C.F.R.

---

[1] Section 504 of the Rehabilitation Act ("RA") similarly provides that "[n]o otherwise qualified individual with a disability ... shall ... be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a) (2000). The enforcement, remedies, and rights are the same under both Title II of the ADA and § 504 of the Rehabilitation Act. *See Hoekstra v. Independent Sch. Dist. No. 283,* 103 F.3d 624, 626 (8th Cir.1996).

[2] The RA contains the additional requirement that the plaintiff show the program or activity from which he is excluded receives federal financial assistance. *See Gorman,* 152 F.3d at 911; *Thomlison v. City of Omaha,* 63 F.3d 786, 788 (8th Cir. 1995). Because federal funding is not alleged, Neff's complaint does not state an actionable claim for relief under the RA.

§ 1630.2(h)(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working," as well as operations of major bodily functions. *See* 42 U.S.C. § 12102(2).

Neff alleges he "acquired a partial disability in an accident at the age of 11 years old ... which has had no limitations on [his] performances on working or otherwise" (Filing No. 1 at CM/ECF p. 2). This allegation does not contain sufficient facts to show that Neff has a physical impairment that substantially limits one or more major life activities (or, alternatively, that he as a record of such an impairment or is regarded as having such an impairment).

But assuming Neff can allege these essential facts, the other two required elements for stating a prima facie ADA claim appear satisfied. With respect to the second element, Neff alleges (1) he "has a degree in carpentry," (2) before being transferred to the Lincoln Regional Center, he "applied for and without any complaints or physical limitations was given a patient work therapy position at the Norfolk Regional Center," where he "completed and performed the tasks as they were assigned to him," (3) his "health was sufficient" when he applied for a work therapy position at the Lincoln Regional in June 2014, and (4) he was told by Dykeman "that after recieving [*sic*] approx 1½ years of therapy that [he] would be accepted onto a job, to which proved out to being false" (Filing No. 1 at CM/ECF p. 3). With respect to the third element, Neff alleges he was expressly told by Connolly that "because of your disability you will not work here" (Filing No. 1 at CM/ECF p. 3).

An aggrieved individual may proceed directly to federal court on a claim under Title II of the ADA. *See Randolph*, 253 F.3d at 347. In other words, there is no requirement that administrative remedies be exhausted before filing suit.

Public officials cannot be sued in their individual capacities under the ADA. *See Alsbrook v. City of Maumelle,* 184 F.3d 999, 1005 n. 8 (8th Cir.1999) (en banc) (explaining that Title II provides disabled individuals redress for discrimination by a "public entity," which does not include individuals). Neff is also precluded from bringing a section 1983 suit against Connolly, Dykeman, and Roy in their individual capacities for alleged violations of Title II of the ADA. *See id.* at 1012 (explaining that Title II's comprehensive remedial scheme bars a § 1983 suit). These defendants may, however, be sued in their official capacities to obtain prospective injunctive relief only. *See Randolph,* 253 F.3d at 348.

Although the United States Court of Appeals for the Eighth Circuit held in *Alsbrook* that Title II of the ADA "was not a proper exercise of Congress's power under Section 5 of the Fourteenth Amendment," 184 F.3d at 1010, and therefore did not abrogate Eleventh Amendment immunity, that holding appears inconsistent with a claim-by-claim approach that the United States Supreme Court subsequently adopted in *United States v. Georgia,* 546 U.S. 151 (2006). *See Klingler v. Dir., Dep't of Revenue,* 455 F.3d 888, 892 (8th Cir. 2006) (panel decision stating "we are no longer confident that *Alsbrook* or *Bill M.*[3] can serve as reliable bases for resolving the plaintiffs' claims for money damages.").

Applying *Georgia*, the question of whether the Nebraska Department of Health and Human Services can be held liable for damages under Title II of the ADA, or whether it is immune from suit under the Eleventh Amendment, depends upon a three-part analysis in which court must determine "(1) which aspects of the State's alleged

---

[3] In *Bill M. ex rel. William M. v. Nebraska Dep't of Health & Human Servs.,* 408 F.3d 1096, 1100 (8th Cir. 2005), *cert. granted, judgment vacated, and case remanded, sub nom., United States v. Nebraska Dep't of Health & Human Servs.,* 547 U.S. 1067 (2006), a panel of the Eighth Circuit concluded that *Alsbrook* had been modified by the Supreme Court's decision in *Tennessee v. Lane,* 541 U.S. 509 (2004), to permit a suit against a State under Title II with respect to claims involving denial of access to the courts, but that *Alsbrook* otherwise remained good law.

conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." [546 U.S. at 159](). It is premature to undertake such an analysis at this time, except to state that Neff's complaint does not allege sufficient facts to show that the state agency violated the Fourteenth Amendment.

## IV. CONCLUSION

Neff's complaint fails to state a claim upon which relief can be granted. On the courts' own motion, however, he will be allowed to file an amended complaint to correct the various pleading deficiencies noted above.

IT IS THEREFORE ORDERED:

1. Plaintiff will have 30 days in which to file an amended complaint that states a claim upon which relief can be granted.

2. Failure to file an amended complaint in accordance with this Memorandum and Order will result in dismissal of this action without further notice.

3. The clerk's office is directed to set a pro se case management deadline using the following text: June 20, 2016: check for amended complaint.

DATED this 20th day of May, 2016.

BY THE COURT:

*Richard G. Kopf*
Senior United States District Judge